# In the United States Court of Federal Claims

No. 09-250C
(Filed August 12, 2010)
TO BE PUBLISHED

| | |
|---|---|
| DONALD E. MARTINEZ,<br><br>            Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>            Defendant. | Equal Access to Justice Act, 28 U.S.C. § 2412(d); prevailing party status based on securing an order remanding case to agency; remand order predicated on agency error; substantial justification; Government's position includes agency's position leading to litigation; recovery of fees and expenses incurred in proceeding before agency; recovery of fees and expenses attributable to settlement discussions |

Aaron L. Parker, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, D.C., for plaintiff.

Douglas K. Mickle, Senior Trial Counsel, Bryant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, Tony West, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

Plaintiff has moved for an award of $11,953.06 in attorneys' fees and other expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (docket entry 22, Apr. 28, 2010) ("Pl.'s Mot."). For the reasons stated below, plaintiff's motion is **GRANTED**.

**I.     Background**

    *A.     Complaint and Allegations of Agency Error*

Plaintiff was a Captain in the United States Army ("Army") who developed Post Traumatic Stress Disorder ("PTSD") during his service in Operation Iraqi Freedom. Compl. ¶ 1

(docket entry 1, Apr. 21, 2009); Defendant's Opposition to Plaintiff's Application for Attorneys' Fees and Costs Pursuant to the EAJA at 1 (docket entry 27, June 11, 2010) ("Def.'s Opp."); *see also* Record of Proceedings of Physical Disability Board of Review ("PDBR") at 1 (Oct. 27, 2009) ("PDBR Dec."), *attached as* App. to Def.'s Opp. ("Def.'s App.") at 23-28 (docket entry 28-1, June 12, 2010).[1] On May 16, 2008, a formal Physical Evaluation Board ("PEB") found that Mr. Martinez had two disabilities that rendered him unfit for continued service, PTSD and chronic wrist pain.[2] Compl. ¶ 16. Both his PTSD and chronic wrist pain were given a disability rating of 10%.[3] *Id.*; PDBR Dec. at 1. As a result, plaintiff was discharged from the Army on August 22, 2008, with a total disability rating of 20% and $60,025.20 in severance pay. Compl. ¶ 21; PDBR Dec. at 1.

Plaintiff instituted this action in April of 2009, contending that the Army was required to rate his PTSD as 50% at the time of his discharge pursuant to 38 C.F.R. § 4.129.[4] Compl. ¶¶ 21-

---

[1] The PDBR reviews the disability ratings of those individuals who were (1) discharged from the armed forces between September 11, 2001 and December 31, 2009, (2) with a condition found to be unfitting, and (3) the unfitting condition was rated 20% or less. 10 U.S.C. § 1554a(b). Congress created the PDBR in response to a report by a Department of Defense ("DOD") independent review group, which examined conditions at Walter Reed Army Medical Center and National Naval Medical Center. *See* Independent Review Group on Rehabilitative Care and Administrative Processes at Walter Reed Army Medical Center and National Naval Medical Center, Rebuilding the Trust at 32 (Apr. 2007) ("The Under Secretary of Defense . . . should conduct a quality assurance review [of] all . . . Disability Evaluation System decisions of 0, 10, or 20 percent disability . . . cases since 2001 to ensure consistency, fairness, and compliance with applicable regulations."); 153 Cong. Rec. S9857-06, S9858 (daily ed. July 25, 2007) (statement of Sen. Levin) ("The bill also establishes an independent board to review and, where appropriate, correct unjustifiably low Department of Defense disability ratings awarded since 2001.").

[2] Plaintiff was hospitalized for five days in March of 2007 after having thoughts of harming himself. Compl. ¶ 10; PDBR Dec. at 2. He was then hospitalized again in April 2008 in New Mexico after revealing suicidal thoughts. Compl. ¶ 13. Immediately after his formal PEB hearing, plaintiff was admitted for further inpatient care in Virginia for several weeks to receive treatment for his PTSD. *Id.* ¶ 18.

[3] In assigning disability percentage ratings, the PEB uses the Veterans Administration Schedule for Rating Disabilities ("VASRD"), a system developed and maintained by the Department of Veterans Affairs ("DVA"). *See* 10 U.S.C. § 1216a; Army Reg. 635-40 § 3-5 (as amended Feb. 28, 2008), *available at* http://www.army.mil/usapa/epubs/pdf/r635_40.pdf.

[4] This case is one of several related cases before the Court involving the military service branches' failure to apply § 4.129. Also before this Court and related to plaintiff's action is a class action, *Sabo v. United States*, 08-899 (class certified, docket entry 33, Sept. 21, 2009), and


23. Section 4.129, a DVA regulation, mandates that if a service member has "a mental disorder that develops in service as a result of a highly stressful event," *i.e.*, PTSD, and that condition is "severe enough to bring about" the service member's "release from active military service," then the rating agency "*shall* assign an evaluation of not less than 50 percent and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted." 38 C.F.R. § 4.129 (emphasis added).

While § 4.129 is a DVA regulation, Congress in the National Defense Authorization Act for Fiscal Year 2008 ("NDAA 2008"), Pub. L. No. 110-181, § 1642, 122 Stat. 3, 465 (Jan. 28, 2008) (codified at 10 U.S.C. § 1216a), mandated that, as of the effective date of that statute, the military services were "to the extent feasible, [to] utilize the schedule for rating disabilities in use by the Department of Veterans Affairs." NDAA 2008, § 1642(a)(1). The military services "may not deviate from the schedule or any such interpretation of the schedule," except pursuant to "such criteria as the Secretary of Defense and the Secretary of Veterans Affairs may jointly prescribe." *Id.* § 1642(a)(1)(B) & (a)(2).

Receiving a 50% disability rating from the military would have been significant for Mr. Martinez because a service member who is rendered unfit for duty with a disability rating above 30% qualifies for full retirement benefits, including TRICARE medical insurance, as opposed to a lump-sum severance payment. 10 U.S.C. § 1201(b)(3)(B).

After an initial delay at the parties' request, the Court conducted several status conferences with counsel in all of the related actions.[5] During the first of these status conferences, the Court asked counsel for defendant to explain the Government's position regarding the applicability of the DVA regulation to the plaintiffs in these cases. Transcript of May 20, 2009 Status Conference at 9, *Sabo*, 08-899 (docket entry 14, filed May 28, 2009). Defendant indicated that it was "not in dispute" that the regulation "did apply . . . certainly for the people [discharged] after 2008." *Id.* at 14. At a second status conference, counsel for defendant again conceded—at least as to those individuals discharged after the effective date of the NDAA 2008, *i.e.*, January 28, 2008—that § 4.129 applied, requiring a rating of 50% or more

---

several individual actions: *Barnes v. United States*, 08-924 (filed Dec. 29, 2008); *Herbst v. United States*, 09-251 (filed Apr. 21, 2009); and *Gonzalez v. United States*, 09-385 (filed June 12, 2009).

[5] *See supra* note 4. Because the actions proceeded on different time frames and the parties were represented by different counsel, the actions were not consolidated. Certain of the cases that were previously assigned to different judges of the court were transferred to this Court in the interest of judicial economy. *See, e.g.,* Order Transferring Case, *Barnes*, No. 08-924 (docket entry 16, June 8, 2009).

for the first six months after discharge if the service member was discharged because of PTSD.[6] *See, e.g.,* Transcript of June 12, 2009 Status Conference at 41, *Sabo*, 08-899 ("June 12 Tr.") (docket entry 22, filed July 29, 2009) ("I think 4.129 certainly applies to the Subclass B [those individuals discharged after the effective date of NDAA 2008].").

Thus, on July 17, 2009, the parties in *Martinez* filed a joint motion to remand the case to the PDBR to, *inter alia*, "assign a temporary disability rating of not less than 50 percent for [Mr. Martinez's] PTSD condition pursuant to 38 C.F.R. § 4.129." Joint Motion to Stay the Case and Remand the Matter to the PDBR at 1 (docket entry 11). The Court granted this motion on July 20, 2009, remanding the case to the PDBR, instructing the agency to permit Mr. Martinez the opportunity to present "all relevant medical evidence," and ordering that "the PDBR shall assign a temporary disability rating of not less than 50 percent for plaintiff's PTSD condition pursuant to 38 C.F.R. § 4.129." Remand Order ¶ 5(a) & (b) (docket entry 12).

     B.     *PDBR Determination and Dismissal*

Pursuant to the Court's remand order, plaintiff's case was considered by the PDBR, which issued its final recommendation on October 27, 2009. The PDBR recognized that consideration of a rating below 50% for the first six months after Mr. Martinez's discharge was "moot" because the PEB should have applied "§ 4.129 to the . . . PTSD adjudication as mandated by NDAA 2008 in effect at the time." PDBR Dec. at 1, 5. This did not end the inquiry, of course, because § 4.129 only requires that the service member be rated 50% for the first six months following discharge. After that point, the rating agency must "schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted." 38 C.F.R. § 4.129. Considering all of the evidence, including evidence from medical examinations done by the DVA, the PDBR found "after due deliberation . . . that . . . 50% was the fairest recommendation for [plaintiff's] permanent disability from PTSD." *Id.* at 3. The PDBR found no reason to re-characterize the PEB's ratings of plaintiff's wrist injury. *Id.* at 4. Accordingly, the PDBR recommended to the Secretary of the Army that plaintiff's records be corrected to reflect a 50% rating for PTSD, and a 60% rating overall (including the 10% for the wrist injury) both in the six months after his discharge and permanently thereafter. *Id.* at 5. The Secretary of the Army accepted this recommendation and ordered Mr. Martinez's records corrected accordingly. Memorandum Concerning PDBR Recommendation for CPT Martinez (Nov. 3, 2009), Def.'s App. at 19-21.

Plaintiff was satisfied with the results of the PDBR review and declined to challenge the

---

[6] Following the discussions at these status conferences, the parties in *Sabo* have worked together to create a novel administrative process whereby opt-in class members can apply to an administrative board—either the corrections board of the relevant service branch or the PDBR, if the service member was discharged between September 11, 2001 and December 31, 2009, 10 U.S.C. § 1554a(b)—for a recalculation of their post-discharge rating and benefits. The parties remain actively engaged in the implementation of this process.

findings before this Court. Therefore, pursuant to Rule 41(a)(1)(A) of the Rules of the Court of Federal Claims ("RCFC"), plaintiff voluntarily dismissed his action. *See* Notice of Voluntary Dismissal (docket entry 21, Apr. 2, 2010). Plaintiff moved for $11,953.06 in attorneys' fees and expenses on April 28, 2010 pursuant to the EAJA, 28 U.S.C. § 2412(d). Pl.'s Mot. at 1.

**II.     Discussion**

To be eligible for attorneys' fees pursuant to the EAJA, plaintiff must show that he was a "prevailing party," that is, someone who has received "at least some relief on the merits of his claim." *Davis v. Nicholson*, 475 F.3d 1360, 1363 (Fed. Cir. 2007) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001)). Once plaintiff demonstrates that he is a prevailing party, "the government bears the burden of establishing that its position was substantially justified." *Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995).

Plaintiff attaches to his EAJA application a detailed affidavit from his counsel explaining and documenting the expenses incurred by counsel on this matter. Affidavit of Aaron L. Parker (Apr. 28, 2010) ("Parker Aff."), *attached as* Ex. 1 to Pl.'s Mot. Additionally, plaintiff has certified pursuant to 28 U.S.C. § 2412(d)(2)(B) that he is an individual whose net worth is less than $2 million dollars, and thus is an eligible "party" under the EAJA.[7] Affidavit of Donald Martinez (March 31, 2001), *attached as* Ex. 2 to Pl.'s Mot.

Defendant raises several arguments in opposition to plaintiff's motion. First, defendant argues that plaintiff here is not a prevailing party either because (1) a party that dismisses a lawsuit voluntarily pursuant to Rule 41(a)(1)(A) cannot be considered to have prevailed, or (2) securing an order directing a remand to the PDBR to consider new issues and evidence is not sufficient under Federal Circuit case law to "prevail." Def.'s Opp. at 4-6. Even if plaintiff was a prevailing party, defendant argues its position was substantially justified. *Id.* at 7-9. Finally, assuming plaintiff is entitled to fees, defendant asserts that certain items described in counsel for plaintiff's itemized accounting cannot be recovered. *Id.* at 9-10.

   *A.     Plaintiff Is a "Prevailing Party" for Purposes of the EAJA*

In 2001, the Supreme Court held that a "prevailing party" is one who has (1) "been awarded some relief by the court," which has (2) effected a "material alteration of the legal relationship of the parties," and (3) the alteration was achieved with the "necessary judicial *imprimatur* on the change."[8] *Buckhannon*, 532 U.S. at 602, 604, 605. In so holding, the

---

   [7] Defendant does not contest Mr. Martinez's status as a party under 28 U.S.C. § 2412(d)(2)(B).

   [8] *Buckhannon* was decided in the context of the fee-shifting provisions of the Fair Housing Amendments Act, 42 U.S.C. § 3601 *et seq.*, but the Federal Circuit has held that

5

Supreme Court found that a party may not be considered to have prevailed "if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601. This type of result, referred to as the "catalyst theory," lacks "the necessary judicial *imprimatur* on the change" implicit in the term "prevailing party." *Id.* at 605.

The post-*Buckhannon* case law in the Federal Circuit clarifies that, in addition to a final judgment or court-ordered consent decree—the specific examples discussed in *Buckhannon*—a party's securing of an order remanding its case to an administrative agency may be enough to be considered "prevailing." *Davis*, 475 F.3d at 1363; *Kelly v. Nicholson*, 463 F.3d 1349, 1353 (Fed. Cir. 2006); *Vaughn v. Principi*, 336 F.3d 1351, 1360 (Fed. Cir. 2003); *Former Employees of Motorola Ceramic Prods. v. United States* ("*Motorola*"), 336 F.3d 1360, 1366 (Fed. Cir. 2003). Specifically, an order remanding the case to an agency can serve as the necessary judicial *imprimatur* if plaintiff can "prove, based on the record, that the remand [was] predicated on administrative error." *Davis*, 475 F.3d at 1366. "The determination of agency error," however, "is not limited to the four corners of the Remand Order," and the Court, therefore, looks to the context of the full record to make such a determination. *Id.* at 1365.

The remand order is itself sufficient to confer prevailing party status if the "remand grants relief on the merits sought by the plaintiff, and the trial court does not retain jurisdiction." *Motorola*, 336 F.3d at 1366. But in cases such as this one, where "the trial court retains jurisdiction, the claimant is a prevailing party only if it" secures a remand predicated on agency error and then "succeeds before the agency." *Id.*

The Federal Circuit has decided two categories of cases that are instructive. On the one hand, if the trial court remands the case to the agency because of an external event, such as a change in the law or discovery of new evidence, the party has not "prevailed" for purposes of EAJA. *See Davis*, 475 F.3d at 1366 ("At oral argument, counsel for both parties reduced our puzzlement when they informed us that while the underlying merits case was on appeal before us, Davis filed a second . . . claim based on new *evidence*. This proffer of new evidence suggests that the facts of *Davis* are comparable to those . . . in *Vaughn*."); *Vaughn*, 336 F.3d at 1360 ("'[Plaintiffs'] request for attorney fees is for an intermediate event that did not involve a merit determination, in [one] case a change in law and in [another] case the discovery of new evidence. . . . [Plaintiffs'] requests for attorney fees are founded solely on the remand for further proceedings without a determination of error."). On the other hand, where the court's remand order was predicated on a legal error made by an agency, the Federal Circuit has found that the party should be considered as having prevailed. *See, e.g., Kelly*, 463 F.3d at 1354 & n.3 (holding that plaintiff's securing of a remand order predicated on the agency's legal error of failing to consider a medical "diagnosis in support of [plaintiff's] claim" for benefits conferred prevailing

---

*Buckhannon* applies to the EAJA. *Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1377 (Fed. Cir. 2002).

party status);[9] *Motorola*, 336 F.3d at 1362, 1368 (holding that where the remand order was predicated on the Government's admission that "reconsideration of the [agency's] negative determination is appropriate," plaintiffs were "prevailing parties for the purposes of EAJA").

In this case, the Court retained jurisdiction after remanding the case to the PDBR. Mr. Martinez is therefore a prevailing party if the remand was predicated upon agency error, and Mr. Martinez then "succeed[ed] before the agency." *Motorola*, 336 F.3d at 1366. The Court concludes that Mr. Martinez meets both of these criteria. The Court's remand to the PDBR was predicated upon the agency's legal error, and thus Mr. Martinez's case is akin to *Motorola* and *Kelly* rather than *Vaughn* and *Davis*. The record amply demonstrates that the remand was ordered because of the Army's failure to properly apply § 4.129 due to DOD's failure to implement the provisions of NDAA 2008. Defendant's lack of an explicit admission of error does not change the analysis.[10] With respect to individuals whose separation from the military post-dated the effective date of the NDAA 2008, defendant's statements and actions indicate that defendant has conceded error. Defendant stated that the practice "prior to October 14, 2008, in the Army was to assign" the general schedule for rating mental disorders, not § 4.129. June 12 Tr. at 16. But defendant acknowledges that January 28, 2008 was the effective date of the NDAA 2008 and that its provisions apply the service branches. *Id.* at 35. Thus, Defendant concedes that it was not until October 14, 2008 that "the Secretary of Defense *has finally* issued regulations that he was required to issue." *Id.* at 16 (emphasis added). For Mr. Martinez, who was discharged in May of 2008, defendant conceded that § 4.129 was not applied when it should have been.

Recognizing this error, the parties *jointly* requested, and the Court so ordered, that the PDBR "assign a temporary disability rating of not less than 50 percent for [Mr. Martinez's] PTSD condition pursuant to 38 C.F.R. § 4.129." Remand Order ¶ 5(b); *see also* Joint Motion to Stay the Case and Remand to the PDBR at 1. This remand is the judicial *imprimatur* necessary for Mr. Martinez to be considered a "prevailing" party. *Motorola*, 336 F.3d at 1366. Moreover, there is no dispute that Mr. Martinez succeeded before the PDBR, which recommended that

---

[9] Chief Judge Rader dissented in *Kelly*, arguing that—on the facts—Mr. Kelly had secured a remand because while his appeal was pending, Congress repealed the requirement that a veteran file a "notice of disagreement" to challenge a claim. *Kelly*, 463 F.3d at 1356 (Rader, J., dissenting). Mr. Kelly had not filed an appropriate "notice of disagreement" regarding the agency's failure to consider his medical diagnosis. *Id.* Judge Rader read the trial court's remand order to be predicated not on the agency's failure to consider evidence before it, but on a "change in statute" as in *Vaughn*. *Id.* at 1356-57.

[10] Defendant correctly observes that it has not conceded that the agency was in error in so many words. Def.'s Opp. at 8 ("We are unaware of any concession of error by the United States in this Court or by the Department of Defense at the PDBR."). The Court, however, looks to the entirety of the record to determine whether the remand was predicated on agency error. *Davis*, 475 F.3d at 1365.

plaintiff's records be corrected to reflect a 50% rating for PTSD both for the six months after his discharge and permanently thereafter, the relief Mr. Martinez sought.

Defendant's argument that dismissal pursuant to Rule 41(a)(1)(A) *categorically* precludes a party from being considered prevailing is unpersuasive. Defendant quotes from *RFR Industries, Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007), for the proposition that "a plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)[A](i) does not bestow 'prevailing party' status upon the defendant." Def.'s Opp. at 5. That case, however, involved a plaintiff which dismissed its case voluntarily immediately after the defendant filed an answer and before any judicial involvement. *Id.* at 1350. Thus, in *RFR Industries*, unlike in this case, there was no remand to an agency, and indeed no judicial action at all, let alone action sufficient to constitute the necessary judicial *imprimatur*. Indeed, *RFR Industries* is the quintessential "catalyst theory" case discussed in *Buckhannon*. Voluntary dismissal after a remand does not automatically preclude a finding of prevailing party status if there has been some preceding judicial action that constitutes a judicial *imprimatur* on a "material alteration of the legal relationship of the parties." *Buckhannon*, 532 U.S. at 604; *see also, e.g., Motorola*, 336 F.3d at 1363 (holding that plaintiffs were prevailing parties even though "[b]y consent of both parties, the Court of International Trade then dismissed the case").

Finally, defendant contends that the PDBR's consideration of new evidence during its review suggests that the remand order was predicated on an "intermediate event," *i.e.*, newly discovered evidence. Def.'s Opp. at 5-6. But this new evidence was *not*, as defendant contends, the basis for the remand. Here, the Court remanded based on an error of law—misapplication of § 4.129—and retained jurisdiction over the case. In discussing the application of § 4.129, the PDBR did not consider new evidence; the remand order itself mandated that § 4.129 applied. Thus, the Board noted that any discussion of what percentage the PTSD should have been rated for the six-month period following discharge would be "moot" because § 4.129 was operative and should have been applied to Mr. Martinez at the time of his discharge. PDBR Dec. at 1, 5. It was in considering whether Mr. Martinez should be rated 50% for the period *after* the initial six-months that the PDBR considered new evidence, specifically medical reports from DVA doctors after his discharge.[11] PDBR Dec. at 3. But whether he should have been rated above 50% beyond those first six months was not the error that was alleged to have been committed by the Army and the DOD. Therefore, the PDBR's consideration of new evidence is irrelevant to determining whether the remand was predicated upon agency error.

---

[11] Indeed, the PDBR's implementing regulations *require* that the board consider any subsequent DVA diagnoses and ratings in considering whether a veteran's rating should be increased. DOD Instruction 6040.44 § 5(a)(4) (as amended June 2, 2009), *available at* http://www.dtic.mil/whs/directives/corres/pdf/604044p.pdf ("[T]he PDBR should compare any DVA disability rating for the specifically military unfitting condition(s) with the PEB combined disability rating and consider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the DVA rating was awarded within 12 months of the Service member's separation.").

In sum, the record demonstrates that Mr. Martinez secured an order remanding his case to the PDBR; the order was predicated on the errors of the Army and DOD in failing to apply 38 C.F.R. § 4.129 in the period from the effective date of the NDAA 2008 through the date when DOD finally implemented the mandate of that statute. The Court retained jurisdiction, and Mr. Martinez succeeded before the agency. "Having secured a remand on the merits with retention of jurisdiction by the Court . . . and then having prevailed on remand," plaintiff is a prevailing party for the purposes of the EAJA. *Motorola*, 336 F.3d at 1368.

      B.      *The Positions of the DOD and the Army Were Not Substantially Justified*

Having established that plaintiff is a "prevailing party," the burden shifts to defendant to show that its position was substantially justified. *Doty*, 71 F.3d at 385. Because Mr. Martinez is a party qualified under § 2412(d), the relevant government position is not only the litigation position of the United States before this Court, but also "the action or failure to act by the agency upon which the civil action is based."[12] 28 U.S.C. § 2412(d)(2)(D); *Hubbard v. United States*,

---

[12] By way of contrast, a party who is not qualified under § 2412(d) as an individual or a small business must seek attorneys' fees under § 2412(b), pursuant to which fees may only be awarded if the Government's *litigation* position was not substantially justified. *N. Star Alaska Hous. Corp. v. United States*, 85 Fed. Cl. 241, 244 (2009); *see also Centext Corp. v. United States*, 486 F.3d 1369, 1372 (Fed. Cir. 2007). Congress amended the EAJA in 1986 to require the Government to show that its position before the agency as well as before the court was substantially justified where the party seeking fees is an individual or small business. Pub. L. No. 99-80, § 2(c)(2)(B), 99 Stat. 183, 185 (1985); *see also Doty*, 71 F.3d at 385-86. The House Judiciary Committee observed that the original text of the EAJA did not specify exactly what Government conduct was to be analyzed as substantially justified, but found that:

> [i]f the government's litigation position was the sole consideration, the government could insulate itself from fee liability simply by conceding error or settling, because such actions will always be deemed "reasonable" litigation positions; thereby having the effect of substantially justifying their position. Interpreting the EAJA so as to restrict its application to mere litigation arguments and not the underlying action which made the suit necessary, would remove the very incentive for careful agency action that Congress hoped to create in 1980. The committee's clarification of the "position" term is intended to broaden the court's or agency's focus of inquiry for EAJA purposes beyond mere litigation arguments, and to require an assessment of those government actions that formed the basis of the litigation.

H.R. Rep. No. 99-120(I), at 12-13 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 141 (internal citations omitted). The Federal Circuit has held that the amendment applies only to EAJA motions by those parties qualified under § 2412(d). *Centext Corp.*, 486 F.3d at 1375 & n.2

480 F.3d 1327, 1332 (Fed. Cir. 2007); *Doty*, 71 F.3d at 386 (citing *Gavette v. Office of Personnel Mgmt.*, 808 F.2d 1456, 1467 (Fed. Cir. 1986) (en banc)); *see also Universal Fid. LP v. United States*, 70 Fed. Cl. 310, 316 (2006) ("The inquiry encompasses both an agency's pre-litigation conduct and the subsequent litigation by the Justice Department in this court.").

"[S]ubstantial justification is measured, not against the case law existing at the time the EAJA motion is decided, but rather, against the case law that was prevailing at the time the government adopted its position." *Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000); *see also Pierce v. Underwood*, 487 U.S. 552, 561 (1988) (holding that the court looks "not [to] what the law now is, but what the Government was substantially justified in believing it to have been"). The Government meets this standard when it argues a position that is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. Whether the position of the United States was substantially justified "depends upon all the pertinent facts of the case." *Bailey v. United States*, 721 F.2d 357, 360 (Fed. Cir. 1983) (quoting *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1391 (Fed. Cir. 1982)).

In this case, government counsel's position during the litigation was eminently reasonable. Indeed, the Court has repeatedly commended defense counsel for his diligent efforts to create a process for resolving, on an expedited basis, the claims of both the individual plaintiffs (including in this action) and the related opt-in class plaintiffs in *Sabo*.

But defendant does not explain why the DOD and the Army were substantially justified in their non-application of § 4.129.[13] Army Regulations formerly set forth a separate set of guidelines for assessing and rating mental disorders, such as PTSD. *See* Army Reg. 635-40, App. B. § B-107. The DOD issued a policy directive on March 13, 2008 that did not alter the way PTSD was rated, but explicitly noted that its policy regarding application of VASRD was "currently under expedited review." Directive-Type Memorandum (DTM) on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008 at 1 (March 13, 2008), *available at* http://prhome.defense.gov/WWCTP/docs/NDAA%2008%201%20PM%20 small.pdf. Finally, on October 14, 2008, in a second policy directive, DOD stated that "[t]he Military Department Secretary concerned will abide by 10 USC 1216a and 38 CFR 4.129, VASRD for disposition of Service members found unfit because of a mental disorder due to

---

("Thus, the report's discussion of the 'purpose of the "Equal Access to Justice Act"'" must be understood to refer to the section 2412(d) provision for fee awards to individuals and small businesses, not to the separate provision, section 2412(b), that applies to fee-shifting in all other cases.").

[13] Defendant appears to argue that the actions of the PDBR were reasonable. Def.'s Opp. at 8 & n.7. But the Court looks to the action or inaction "by the agency *upon which the civil action is based*." 28 U.S.C. § 2412(d)(2)(D) (emphasis added). In this case, it was the actions of the Army PEB and the DOD in failing to apply § 4.129 that prompted the civil action.

traumatic stress. When a mental disorder that develops on active duty as a result of a highly stressful event is severe enough to bring about release from active military service, the rating agency shall assign an evaluation of not less than 50 percent." Policy Memorandum on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008, Enclosure 7, at 19 (Oct. 14, 2008), *available at* http://prhome.defense.gov/WWCTP/docs/ NDAA%2008%202%20PM%20sm.pdf.

Defendant notes that "[i]n regard[] to the Army's previous application of 38 C.F.R. § 4.129, we have not addressed the merits of Mr. Martinez's claim, but simply acknowledge that the PDBR would process Mr. Martinez's case in accordance with D[O]D's newly articulated policy regarding PTSD, effective October 14, 2008, which was well after Mr. Martinez's PEB." Def.'s Opp. at 8-9. That is all well and good, but it is defendant's burden to explain why DOD did not promptly comply with the mandate of NDAA 2008 and why DOD's lengthy period of inaction was "substantially justified." It remains unexplained why DOD took 10 months to decide to "abide" by the mandates of 10 U.S.C. § 1216a and 38 C.F.R. § 4.129.

Without any evidence in the record regarding the reasons for the delay, the Court concludes that the position of DOD and the Army in failing to timely comply with 10 U.S.C. § 1216a and 38 C.F.R. § 4.129 was not substantially justified. *See Libas, Ltd. v. United States*, 314 F.3d 1362, 1364 (Fed. Cir. 2003) ("[T]he trial court can consider the government's failure to submit evidence as an admission that its position was not substantially justified and so state in its opinion."); *Sisul v. Astrue*, No. 08-cv-4044, 2010 WL 271727, at *1 (C.D. Ill. Jan. 14, 2010) ("Where the government has put on no evidence or argument that its position was 'substantially justified,' it cannot be said that it has carried this burden."); *see also Tressler v. Heckler*, 748 F.2d 146, 150 (3d Cir. 1984) (reversing denial of attorneys' fees because "nowhere did the Secretary offer evidence that the facts found by the [Appeals Council of the Social Security Administration ('AC')] had a reasonable basis in truth, that the AC's interpretation of the law had a reasonable basis in theory, or that the facts found by the AC supported any legal theory for denying benefits"). Therefore, because Mr. Martinez is a "prevailing party" and the Government has failed to demonstrate that the positions of the Army and the DOD were "substantially justified," Mr. Martinez is entitled to attorneys' fees and other expenses pursuant to EAJA.[14]

  C.  *Plaintiff is Entitled to $11,953.06 in Attorneys' Fees and Other Expenses*

Under the EAJA, the fees available to a prevailing plaintiff are "those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is

---

[14] Defendant does not assert, and the Court does not find, any "special circumstances [that would] make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Universal Fid. LP*, 70 Fed. Cl. at 317.

11

tried." *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987); *see also Hopi Tribe v. United States*, 55 Fed. Cl. 81, 100 (2002) ("The 'term "expenses" is generally understood to include all the expenditures made by a litigant in connection with an action.'") (quoting *Bennett v. Dep't of the Navy*, 699 F.2d 1140, 1143 (Fed. Cir. 1983)). The statute provides examples of the types of fees and other expenses that may be awarded, such as "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). But this list is not exclusive. *Oliveira*, 827 F.2d at 744. "The quantum and method of proof of each allowable expense is discretionary with the trial court." *Id.*

Plaintiff seeks $11,953.06 in attorneys' fees and other expenses. Pl.'s Mot. at 1. Plaintiff's counsel spent 80.10 hours working on this case but, "[e]xercising billing judgment," requests fees for only 67 hours. Parker Aff. at 6. Plaintiff asks for $173.18 per hour plus $350 in costs.[15] *Id.*; Pl.'s Mot. at 7. Plaintiff's counsel does not seek a higher rate or additional fees as a result of a "special factor," such as an "identifiable practice specialty." 28 U.S.C. § 2412(d)(2)(A); *Pierce*, 487 U.S. at 572.

Defendant does not contest plaintiff's requested $173.18 hourly rate. Instead, defendant contests only two portions of plaintiff's fee request, specifically, that the Court "should reduce Mr. Martinez's claim to exclude fees incurred in his agency action and in 'settlement' negotiations." Def.'s Opp. at 9.

        1.      <u>Plaintiff May Recover Fees Incurred in Proceedings Before the PDBR</u>

Defendant first asserts that plaintiff should not recover attorneys' fees attributable to his counsel's pursuing his claim before the PDBR. Def.'s Opp. at 9. Defendant contends that the EAJA limits recovery to only those fees incurred in "civil actions." *Id.* According to defendant, a "'civil action' should be given . . . its ordinary (and most restrictive) meaning to include only judicial proceedings." *Id.* (quoting *Levernier v. United States*, 947 F.2d 497, 503 (Fed. Cir. 1991)). Plaintiff's counsel devoted 21.8 hours to work during the PDBR proceedings. Parker Aff. at 4-5. At the rate of $173.18 per hour, this work equates to $3,775.32 in fees.

The Supreme Court has held that "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award." *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989); *see also Shalala v. Schaefer*, 509 U.S. 292, 298-99 (1993). In *Sullivan*, 490 U.S. at 892, the Court found that administrative proceedings held pursuant to a remand order by a district court in order to determine a social security claimant's entitlement to benefits were "an integral part of the 'civil action' for judicial

---

[15] The $173.18 hourly rate is based on the statutory rate of $125 per hour, 28 U.S.C. § 2412(d)(2)(A), plus a cost of living allowance. The cost of living allowance is calculated by multiplying $125 by the Consumer Price Index for November 2008 in Washington, D.C. (138.547). *Id.*; *see also* Parker Aff. at 6 n.1.

review, and thus attorney's fees for representation on remand [were] available subject to the other limitations in the EAJA." Additionally, in holding that a remand predicated on agency error can provide the necessary judicial *imprimatur* on a material alteration of legal rights, the Federal Circuit relied upon the Supreme Court's holding regarding judicial proceedings in *Sullivan* and its progeny. *See Motorola*, 336 F.3d at 1365 (citing *Shalala*, 509 U.S. at 292 and *Sullivan*, 490 U.S. at 877). Thus, *Sullivan* survives *Buckhannon*, at least insofar as it governs the effect of a remand to an agency on a plaintiff's status as a prevailing party for purposes of the EAJA.

As was the case in *Sullivan*, the administrative proceeding on remand in this case was "crucial to the vindication of [plaintiff's] rights." 490 U.S. at 889. In order to be considered "prevailing," plaintiff was required to succeed before the PDBR, which he did. *See Kelly*, 463 F.3d at 1353; *Motorola*, 336 F.3d at 1366. The administrative proceeding before the PDBR was so intimately connected with the judicial proceeding as to be considered part of the "civil action." Accordingly, plaintiff is entitled to receive attorneys' fees for the time his counsel devoted to the proceedings before the PDBR.

Furthermore, defendant's reliance on *Levernier* is misplaced. The plaintiff in that case sought fees for agency activity *before* the plaintiff had filed suit. *Levernier*, 947 F.2d at 498-99. In contrast, plaintiff's request for attorneys' fees and other expenses in the present case includes time spent in proceedings before an agency during the pendency of this action as a result of this Court's remand order. Thus, *Levernier* is factually distinguishable and does not control here.

Consistent with *Sullivan*, plaintiff is entitled to fees for time his attorney devoted to an agency proceeding because such time was "crucial to the vindication of [plaintiff's] rights." *Sullivan*, 490 U.S. at 889. The Court's award will, therefore, include $3,775.32 in fees for time devoted to work undertaken during the proceedings before the PDBR.

    2.    <u>Plaintiff May Recover Fees Incurred Preparing for and Participating in Settlement Discussions</u>

Defendant next contends that plaintiff's fee award should not include time spent in settlement discussions. Def.'s Opp. at 10. Counsel for Mr. Martinez seeks compensation for 6.8 hours spent either preparing for or participating in settlement discussions. Parker Aff. at 3, 4. At the agreed-upon rate of $173.18 per hour, that equates to $1,177.62 in fees.

The Court has located only one case discussing this precise issue in the context of the EAJA, the case relied upon by defendant, *Cobell v. Norton*, 407 F. Supp. 2d 140, 156 (D.D.C. 2005). *See* Def.'s Opp. at 10. In that case, plaintiffs sought fees and expenses for time spent in unsuccessful court-ordered mediation. *Cobell*, 407 F. Supp. 2d at 156. The court reasoned that plaintiffs had entered into the mediation

>to avoid protracted litigation. Had these efforts culminated in a favorable settlement, plaintiffs would not have taken the case to trial. Instead, they would have sought a judgment affirming the settlement agreement and, to the extent the terms "materially altered" the legal relationship between the parties, would have been entitled to a fee award as a "prevailing party." Plaintiffs' settlement efforts did not bear fruit; they cannot be compensated for that time.

*Id.* (internal citations omitted).

But *Cobell* appears to conflate EAJA's "prevailing party" requirement with the task of determining which categories of expenses should be awarded. The Court has already concluded that the remand order to the PDBR was a judicial *imprimatur* on a material alteration of the legal relationship between the parties; plaintiff has already met his burden to show that he is a "prevailing party." Plaintiff is not required, as the Government seems to suggest, to prove a direct causal link between each item of expense he seeks and a judicial *imprimatur* on a material alteration of the parties' legal relationship. Such a requirement would exclude ordinary litigation expenses that are regularly awarded to prevailing parties under EAJA, such as, for example, photocopying and binding expenses, *Info. Scis. Corp. v. United States*, 86 Fed. Cl. 269, 292 (2009), attorney travel expenses, *ACE Constructors, Inc. v. United States*, 81 Fed. Cl. 161, 173 (2008), or long-distance phone charges. *Id.* Just like unsuccessful mediation, such ordinary expenses cannot be said to have directly resulted in a judicially mandated alteration of legal rights. But settlement discussions—like photocopying and attorney travel expenses—are reasonable and necessary expenses incurred in litigating a case, and such expenses are "customarily charged to the client." *Oliveira*, 827 F.2d at 744. It is this latter standard that is the relevant inquiry here.

Consistent with this standard, in the context of other fee-shifting statutes, courts have routinely awarded fees for time spent in unsuccessful settlement discussions, which are "an ordinary part of the litigation process." *Couch v. Cont'l Cas. Co.*, No. 06-80, 2008 WL 131198, at *5 (E.D. Ky. Jan. 11, 2008) (awarding fees incurred during settlement negotiations pursuant to the fee shifting provision of ERISA, 29 U.S.C. § 1132(g)(1)); *see also Cuellar v. Joyce*, 603 F.3d 1142, 1144 (9th Cir. 2010) (awarding fees for time spent in unsuccessful mediation in context of fee-shifting provision relating to the Hague Convention on the Civil Aspects of International Child Abduction, 42 U.S.C. § 11607(b)(3)); *Williams v. Conagra Poultry Co.*, No. 03-2976, 113 F. App'x 725, 728 (8th Cir. Nov. 4, 2004) (awarding fees for unsuccessful mediation in context of successful claim pursuant to 42 U.S.C. § 1983); *Michigan v. U.S. Envtl. Prot. Agency*, 254 F.3d 1087, 1096 (D.C. Cir. 2001) (awarding fees incurred during settlement negotiations pursuant to fee-shifting provisions of the Clean Air Act, 42 U.S.C. § 7607(f)); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, No. 03-3924, 2008 WL 2600364, at *11 (E.D. Pa. June 26, 2008) (awarding fees incurred during settlement negotiations pursuant to ERISA); *Town of Grantwood Village v. United States*, 55 Fed. Cl. 481, 486 (2003) (awarding fees incurred when "parties were attempting to reach settlement" pursuant to Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c)); *Pohl Corp. v. United*

*States*, 29 Fed. Cl. 66, 74 (1993) (awarding fees for "preparation and attendance at settlement conferences" pursuant to the fee shifting provision of the Internal Revenue Code, I.R.C. § 7430(a)).

Exploring potential settlement is a routine part of litigation. Customarily the fees incurred during settlement discussions would be charged to the client even if the discussions were ultimately unsuccessful. The Court, therefore, finds no reason why plaintiff's counsel here should not be awarded fees for the time he spent preparing for and conducting settlement discussions.

Moreover, a categorical rule against awarding fees expended during settlement negotiations would "discourage the pursuit of settlements" on the part of plaintiffs. *Soberman v. Groff Studios Corp.*, No. 99 Civ. 1005, 2000 WL 1010288, at *3 (S.D.N.Y. July 21, 2000) (awarding fees incurred during unsuccessful mediation pursuant to contractual provision). Creating a disincentive to settlement would erect a barrier to small businesses and individuals' "securing vindication of their rights," a result entirely inconsistent with the purposes of the EAJA, *Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96-1418, at 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4988), and antithetical to the cooperative resolution of disputes generally.[16]

For these reasons, the Court's award will include $1,177.62 in fees incurred incident to settlement negotiations. The remainder of plaintiff's request is reasonable and unchallenged by defendant. Accordingly, the Court will award plaintiff the full amount of his request, *i.e.*, $11,953.06.

## CONCLUSION

For the reasons stated above, plaintiff's motion for attorneys' fees and other expenses pursuant to the EAJA, 28 U.S.C. § 2412(d), is **GRANTED**. The Clerk is directed to enter judgment in favor of plaintiff in the amount of $11,953.06.

**IT IS SO ORDERED.**

                                                   s/ George W. Miller
                                                   GEORGE W. MILLER
                                                   Judge

---

[16] "Discourage litigation. Persuade your neighbors to compromise whenever you can. Point out to them how the nominal winner is often a real loser—in fees, expenses, and waste of time. As a peacemaker the lawyer has a superior opportunity of being a good man. There will still be business enough." Abraham Lincoln, *Notes for a Law Lecture* (c. 1850), *in* A. LINCOLN, SPEECHES AND WRITINGS: 1832-1858, at 245-46 (Don E. Fehrenbacher, ed., 1989), *available at* http://showcase.netins.net/web/creative/lincoln/speeches/lawlect.htm.